UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA BUTLER AND WESLEY BUTLER, on behalf of themselves and all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>HARVEST MANAGEMENT SUB, LLC d/b/a HOLIDAY RETIREMENT,<br><br>Defendant. | No. 2:17-cv-00685-RAJ<br><br>**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AND NOTICE TO FLSA COLLECTIVE**<br><br>NOTE ON MOTION CALENDAR: JANUARY 26, 2018<br><br>**ORAL ARGUMENT REQUESTED** |

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT PROCEDURAL HISTORY .................................................................... 3

III. RELEVANT FACTS ........................................................................................................ 4

    A.    Plaintiffs and the Opt-Ins Worked in Only a Small and Narrowly
           Distributed Subset of Holiday's Nearly 300 Communities ..................................... 4

    B.    Holiday Communities Vary Based on Setting, Size, and Other Factors ................ 5

    C.    Holiday's Retirement Community Management Structure Results in
           Variations in How Co-Manager Duties and Responsibilities Are Exercised ........ 5

    D.    Co-Managers' Duties Include Management and Supervisory
           Responsibilities and They Received Training in Those Roles .............................. 6

    E.    Plaintiffs' and the Opt-Ins' Own Testimony Shows That They and Other
           Co-Managers Are Not Similarly Situated with Respect to Exempt Job
           Duties ............................................................................................................... 7

         1.    Plaintiffs' Testimony Shows That Co-Managers Are Not Similarly
               Situated with Respect to Day-to-Day Community Management
               Duties ................................................................................................... 7

         2.    Plaintiffs' Testimony Shows That Co-Managers Are Not Similarly
               Situated Regarding Their Supervision of Hourly Employees.................... 9

         3.    Co-Managers Are Not Similarly Situated with Respect to Making
               or Recommending Personnel Decisions ................................................ 10

IV. ARGUMENT AND CITATION OF AUTHORITY ....................................................... 11

    A.    The Court Should Exercise Its Discretion to Deny Conditional
           Certification and Notice to the Requested Nationwide Class .............................. 12

         1.    The Court Should Decide Holiday's Dispositive Motions First.............. 12

         2.    Granting Holiday's Motion to Dismiss Requires Denial of
               Plaintiffs' Motion As Moot and Dismissal of Opt-Ins' Claims............... 13

         3.    Granting Holiday's Motion to Strike Will Result in the Absence of
               Any Opt-Ins and Require Denial of Conditional Certification................ 14

    B.    Plaintiffs Have Not Met Their Burden for Conditional Certification.................... 16

         1.    The Similarly Situated Standard Requires Common Proof ..................... 16

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

| | 2. | Heightened Analysis is Appropriate Where Informal Notice Has Been Issued and Substantial Evidence About Job Duties Already Exists | 18 |
| | 3. | Plaintiffs Have Not Shown a Common Plan or Policy That Violated the FLSA, and Conditional Certification Therefore Must Be Denied | 19 |
| | | a. Plaintiffs' Uniform Job Classification is Not Proof of a Common Plan or Policy Sufficient to Support Conditional Certification | 19 |
| | | b. The Co-Manager Job Description Does Not Support Certification | 21 |
| | | c. Corporate Guidelines Do Not Support Classification | 22 |
| | | d. Other Corporate Documents and Uniform Co-Manager Training Do Not Support Classification | 22 |
| | | e. Plaintiffs' and the Opt-Ins' Declarations Do Not Demonstrate that They and Other Co-Managers Are Similarly Situated | 23 |
| V. | CONCLUSION | | 24 |

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - iii

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

**Cases**

*Adami v. Cardo Windows, Inc.*,
   299 F.R.D. 68 (D.N.J. 2014) ..........................................................................14, 16

*Ahmed v, T.J. Maxx Corp.*,
   103 F. Supp. 3d 343 (E.D.N.Y. 2013) .............................................................20, 23

*Baldwin v. Trailer Inns, Inc.*,
   266 F.3d 1104 (9th Cir. 2001) ..............................................................................24

*Balvage v. Ryderwood Imp. & Serv. Ass'n, Inc.*,
   2012 WL 2977981 (W.D. Wash. 2012)...................................................................6

*Bazell v. Body Contour*,
   2016 U.S. Dist. LEXIS 89012 (W.D. Wash. July 8, 2016) ...................................18

*Bollinger v. Residential Capital LLC*,
   761 F. Supp. 2d 1114 (W.D. Wash. 2011)..............................................................12

*Brown v. Barnes & Noble, Inc.*,
   252 F. Supp. 3d 255 (S.D.N.Y. 2017)............................................................ *passim*

*Colson v. Avnet, Inc.*,
   687 F. Supp. 2d 914 (D. Ariz. 2010) .....................................................................20

*Conde v. Open Door Mktg., LLC*,
   223 F. Supp. 3d 949 (N.D. Cal. 2017) ..............................................................15, 16

*Cwik v. Harvest Mgmt. Sub, LLC*,
   No. 2:12-cv-08309 (C.D. Cal. April 15, 2013).........................................3, 20, 21

*Detho v. Bilal*,
   2008 WL 2962821 (S.D. Tex. 2008) ......................................................................19

*Dukes v. Wal-Mart Stores, Inc.*,
   564 U.S. 338 (2011)................................................................................................17

*Fischer v. Kmart Corp.*,
   2014 WL 3817368 (D.N.J. 2014) ...........................................................................14

*Flores v. City of San Gabriel*,
   824 F.3d 890 (9th Cir. 2016) ...................................................................................3

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

*Henry v. Quicken Loans, Inc.*,
　497 F.3d 573 (6th Cir. 2007) ............................................22

*Hoffman-LaRoche, Inc. v. Sperling*,
　493 U.S. 165 (1989)............................................12

*Jenkins v. TJX Cos.*,
　853 F. Supp. 2d 317 (E.D.N.Y. 2012) ............................................20

*Khadera v. ABM Indus. Inc.*,
　701 F. Supp. 2d 1190 (W.D. Wash. 2010)............................................16

*Korenblum v. Citigroup, Inc.*,
　195 F. Supp. 3d 475 (S.D.N.Y. 2016)............................................18

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*,
　2009 WL 1515175 (W.D. Pa. 2009) ............................................4

*Lewis-Gursky v. Citigroup, Inc.*,
　No. 8:15-cv-2887, 2017 WL 892604 (M.D. Fla. Mar. 6, 2017) ............................................18

*Liebesman v. Competitor Group*,
　No. 4-14-cv-1653, slip op. (E.D. Mo. Jan. 15, 2016) ............................................12

*MacGregor v. Farmers Ins. Exchange*,
　2011 U.S. Dist. LEXIS 80361 (D.S.C. 2011) ............................................17

*McLaughlin v. Richland Shoe Co.*,
　486 U.S. 128 (1988)............................................3

*Mike v. Safeco Ins. Co.*,
　274 F. Supp. 2d 216 (D. Conn. 2003) ............................................17

*Morangelli v. Chemed Corp.*,
　2010 U.S. Dist. LEXIS 146149 (E.D.N.Y. 2010)............................................14, 15, 16

*Morris v. Ernst & Young*, LLP,
　834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017) ............................................2

*Myers v. Hertz Corp.*,
　624 F.3d 537 (2d Cir. 2010)............................................12

*Palacios v. Boehringer Ingelheim Pharmas., Inc.*,
　2011 WL 6794438 (S.D. Fla. 2011) ............................................17

*Saravia v. Dynamex*,
　310 F.R.D. 412 (N.D. Cal. 2015)............................................15, 16

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - v

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

*Shaia v. Harvest Mgmt. Sub LLC*,
   306 F.R.D. 268 (N.D. Cal. 2015) .......................................................................15

*Steger v. Life Time Fitness, Inc.*,
   2016 U.S. Dist. LEXIS 7267 (N.D. Ill. 2016) ......................................................18

*Taylor v. Waddell & Reed, Inc.*,
   2012 WL 10669 (S.D. Cal. 2012) ........................................................................13

*Trinh v. J.P. Morgan Chase & Co.*,
   2008 WL 1860161 (S.D. Cal. 2008) .....................................................................17

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
   2011 WL 2693712 (S.D.N.Y. 2011) .....................................................................17

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ................................................................................19

*Wass v. Dolgencorp, LLC*,
   2014 U.S. Dist. LEXIS 147613 (W.D. Mo. 2014) ................................................13

*White v. Rick Bus Co.*,
   743 F. Supp. 2d 380 (D.N.J. 2010) .........................................................................6

*Wright v. Schock*,
   742 F.2d 541 (9th Cir. 1984) ................................................................................13

**Statutes**

29 U.S.C. § 213(a) ...........................................................................................................3

29 U.S.C. § 216(b) .................................................................................................12, 16

29 U.S.C. § 255(a) ...........................................................................................................3

**Other Authorities**

29 C.F.R. § 541.100 ....................................................................................................3, 11

29 C.F.R. § 541.700 .........................................................................................................8

Fed. R. Civ. P. 23 ...........................................................................................................17

Fed. R. Civ. P. 56 ...........................................................................................................13

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - vi

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

# I.    INTRODUCTION

This Court should exercise its discretion to manage this case and deny Plaintiffs' Motion for Conditional Certification (Dkt. 38) ("Motion") for two essential reasons.

*First*, conditional certification is improper because the Named Plaintiffs, Patricia and Wesley Butler ("Plaintiffs"), cannot recover in this case, nor can the Opt-In Plaintiffs ("Opt-Ins") whom they have taken the opportunity to invite into the lawsuit. Plaintiffs' claims are barred pursuant to the FLSA's standard two-year statute of limitations, and they can recover only if they show not only that Defendant Holiday Retirement ("Holiday") violated the FLSA, but that it did so *willfully*. *See* 29 U.S.C. § 255(a). Plaintiffs offer no evidence to support this showing.

Notwithstanding the fact that their claims are time-barred, Plaintiffs' claims, as well as those of the Opt-Ins, are also subject to Holiday's two fully-briefed dispositive motions on other grounds.[1] Granting Holiday's pending Motion to Dismiss Plaintiffs' claims for failing to disclose their overtime claims in bankruptcy proceedings (Dkt. 11) would require dismissal of their Complaint and moot their Motion. Granting Holiday's Motion to Strike or Dismiss the Opt-Ins (Dkt. 30, 59)—who individually agreed to arbitrate their claims, as have nearly 99% of former Co-Managers nationwide—would strip this case of any Co-Managers allegedly "similarly situated" to the Butlers or to one another, also making certification improper. Serving notice to a nationwide group who would face dismissal for the same reason would do *nothing* to promote judicial economy. And if Holiday's Motion to Dismiss the Butlers' claims is not granted, they are nevertheless not similarly situated to the Opt-Ins because they, unlike the Opt-Ins, are not bound by arbitration agreements and cannot assert defenses to arbitration for those who are.

*Second*, this Court should deny Plaintiffs' Motion because their own and the Opt-Ins' own sworn testimony demonstrates that they are not similarly situated to one another, and that each Co-Manager's individual job duties must be assessed to determine whether he or she was

---

[1] The arguments made in and the evidence supporting these two pending dispositive motions (Dkt. 11 (as supplemented by Dkt. 59); Dkt. 30) are incorporated herein by this reference.

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

properly classified as exempt from the overtime provisions of the FLSA. In particular, eleven of the 17 declarations submitted in support of the Motion (Dkts. 40-56) demonstrate differences among Co-Managers through their distinctive testimony attempting to explain why record evidence about the management duties he or she performed should be taken to mean something different.[2] While Plaintiffs may argue that this evidence relates to the merits of the classification inquiry and should not be considered at this juncture, it is they who have put this testimony before the Court and it is well within the Court's discretion to consider it.[3]

Furthermore, the question whether Plaintiffs, the Opt-Ins, and the hundreds of members of their requested nationwide group are similarly situated should not be viewed in a vacuum. Even at the conditional certification stage, it is not enough that Plaintiffs offer evidence of *something* they may have in common, such as a job title, similar training, or guidelines for Holiday communities about popcorn popping or other operational matters. (*See* Pls.' Mot. at 4.) To sustain the requested nationwide certification, Plaintiffs must present evidence about their misclassification claim that applies not only to all of the Opt-Ins, but to all of the Co-Managers from the approximate 43 states in which Holiday has operated over the past three years about whom they offer no testimony. It is clear that Plaintiffs have not sustained their burden to justify any class, and it is even clearer that nationwide certification is inappropriate. In short, this Court should exercise its discretionary authority to deny the requested certification and notice in this case. No judicial economy will be achieved by doing otherwise.

[2] *See* Dkt. 42 (C. Shatto Decl.) ¶¶ 28, 30-31; Dkt. 43 (D. Shatto Decl.) ¶¶ 30-32; Dkt. 44 (D. O'Connell Decl.) ¶¶ 29-34; Dkt. 45 (G. Russell Decl.) ¶ 31; Dkt. 46 (K. Russell Decl.) ¶ 27; Dkt. 49 (K. Shahan Decl.) ¶¶ 22-23; Dkt. 50 (S. Shahan Decl.) ¶¶ 22-23; Dkt. 51 (K. Rogers Decl.) ¶¶ 29-31; Dkt. 52 (L. Chartier Decl.) ¶¶ 27-29); Dkt. 53 (M. Hamblin Decl.) ¶¶ 22, 24-26; Dkt. 55 (N. Sykes Decl.) ¶¶ 29-31.

[3] In Holiday's Motion to Strike urging this Court to enforce the arbitration agreements, Holiday argued that Plaintiffs were *supervisors* and not employees, and thus are not protected by the NLRA from compelled individual arbitration. (Dkt. 30 at 15-19 (discussing *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017).) In support of this argument, Holiday offered substantial documentary evidence showing the types of management and supervisory work Plaintiffs and the Opt-Ins performed. (*See* Dkt. 32, Exs. A-Z, AA-QQ.) Plaintiffs attempted to explain this evidence in declaration testimony submitted in support of the instant Motion.

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

## II.   RELEVANT PROCEDURAL HISTORY

Plaintiffs Patricia and Wesley Butler filed this lawsuit on May 2, 2017, claiming that they and all other former Co-Managers were misclassified as exempt from the FLSA's overtime provisions. (Dkt. 1 ¶¶ 3, 10.) Plaintiffs seek a windfall of overtime, liquidated damages, interest, and attorneys' fees on behalf of a claimed nationwide collective of Co-Managers for a period from May 2, 2014[4] through November 2016. (*Id.* ¶¶ 5, 6, 10, 21, 58; Pls.' Mot. at 3.) Holiday's answer to the Complaint is pending the Court's ruling on Holiday's Motion to Dismiss.[5]

In September 2016, Plaintiffs' counsel emailed Wesley Butler about potential overtime claims. (W. Butler Decl. (Dkt. 22) ¶¶ 10-11; P. Butler Decl. (Dkt. 23), ¶ 10.) While the precise circumstances of this contact are unknown, the Butlers fell within the group of employees who in January 2014 received notice of a proposed settlement in an earlier FLSA case alleging that Co-Managers and other employees were improperly classified as exempt. *Cwik v. Harvest Mgmt. Sub, LLC*, No. 2:12-cv-08309-DMG-JC (C.D. Cal., filed Sept. 26, 2012) (*see* Dkt. 11 at 3-4 & Exs. thereto.) For more than a year—from September 2016 through the present—Plaintiffs and their counsel had ample opportunity to locate other former Co-Managers and facilitate their joining this case. As a result, 24 former Co-Managers have filed generalized, undated notices of consent to join unspecified FLSA litigation against Holiday. (Dkt. 25-27, 35, 58.)

On December 4, 2017, more than seven months after filing suit, Plaintiffs filed the instant

---

[4] As noted above, a two-year limitations period presumptively applies to FLSA overtime claims. 29 U.S.C. § 255(a). Only when an employer's violation is proven to be "willful" is the period extended to three years. *Id.*; *see also Flores v. City of San Gabriel*, 824 F.3d 890, 907-08 (9th Cir. 2016) (concurring opinion discussing willfulness standard in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Plaintiffs have not shown that Holiday acted unreasonably with respect to applying exempt classification *to each and every* Co-Manager, as *Richland Shoe* requires. A two-year period therefore applies and eliminates Plaintiffs' claims, as well as those of Opt-Ins Jessica and Chad Baker, Nina and Michael Sykes, Anne Hornback, Daniel O'Connell, and Phillip Sinclair. (*See* Stone Decl. II ¶ 16.) Removing individuals barred by the standard two-year period would eliminate testimonial evidence from Washington (P. Butler, W. Butler), Maine (M. Sykes, N. Sykes), and Florida (D. O'Connell). Michael and Nina Sykes were never Co-Managers in Connecticut, Colorado, New York, or New Hampshire. (*Id.* ¶ 16.)

[5] Should Holiday be required to answer the Complaint after this Court decides Holiday's Motion to Dismiss, Holiday anticipates asserting various affirmative defenses, including that Plaintiffs were properly classified as exempt under the FLSA's administrative and executive exemptions (or a combination thereof). *See* 29 U.S.C. § 213(a); 29 C.F.R. §§ 541.100 *et seq.*, -.200 *et seq.*, -.708.

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 3

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

Motion.[6] (Dkt. 38.) Plaintiffs and 15 Opt-Ins offer declaration testimony in support of the Motion. (Dkt. 40-56.) While nine other individuals have filed opt-in notices,[7] none of their consent forms (like the other Opt-Ins') refer to the claims in this case, bears a date, states a location in which they worked, mentions the Co-Manager job, or refers to this litigation by name or case number. (Dkt. 25-27, 35, 58.) These opt-in forms thus offer "no evidentiary value" in deciding the Motion. *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2009 WL 1515175, at *4 (W.D. Pa. 2009).

## III.  RELEVANT FACTS

### A.  <u>Plaintiffs and the Opt-Ins Worked in Only a Small and Narrowly Distributed Subset of Holiday's Nearly 300 Communities</u>

Holiday is one of the largest providers of senior living communities in the country. Over the past three years, Holiday has operated approximately 285 diverse communities across 43 states and served tens of thousands of residents. (*See* Decl. of Michele Stone filed herewith ("Stone Decl. II") ¶ 4; Decl. of Michele Stone (Dkt. 32) ("Stone Decl. I") ¶ 3.) Some states have many communities, others only a few. For example, four of the 34 states from which Plaintiffs offer zero evidence about Co-Manager job duties (California, Texas, Oregon, Michigan) are home to approximately 35% of the aforementioned 285 communities. (*Id.* ¶ 5.) Six of the states for which Plaintiffs *do* offer evidence embrace just 9% of the communities. (*Id.*) In the three states with a larger Holiday presence that Plaintiffs purport to represent—Florida (20), North Carolina (14), and Washington (16) (*id.*)—Plaintiffs and the Opt-Ins cover only five communities. Moreover, for each such state, only one witness, or a married pair, offers testimony about working as a Co-Manager there.[8]

---

[6] Also pending is Plaintiffs' Motion for Equitable Tolling, filed on October 20, 2017, well after the Complaint was filed and about six weeks before Plaintiffs filed the instant Motion. (Dkt. 28, 36.) Holiday's opposition (Dkt. 33) shows that nothing about this case warrants the extraordinary remedy of equitable tolling.

[7] Michael Schwartz and Shea Schwartz (Dkt. 25); Anne Hornback (Dkt. 26); Daren Hamblin (Dkt. 27); and Jessica Baker, Chad Baker, Scott Randall, Philip Sinclair, and Shawn Smith (Dkt. 58).

[8] Florida: D. O'Connell (Dkt. 44); North Carolina: Gordon and Kathleen Russell (Dkt. 45-46); Washington: Patricia and Wesley Butler (Dkt. 40-41).

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

1    Holiday has employed approximately 720 Co-Managers in the past two years. (This

2 period is, in fact, overly broad, given that the statute of limitations for any opt-in plaintiff

3 continues to run until they file a consent to join this litigation. *See* Def.'s Opp. to Pls.' Mot. for

4 Tolling (Dkt. 33) at 2-3; 29 U.S.C. § 256(b).) Across a three-year period, which Plaintiffs

5 baselessly claim applies in this case (*see* n.4, *supra*), Holiday employed 1,242 Co-Managers.

6 (Stone Decl. II ¶ 13.) Plaintiffs and the Opt-Ins worked as Co-Managers in just 18 of the 285

7 communities—just 6.3%—encompassed within that timeframe. (*Id.* ¶ 14.) Those who submitted

8 declarations in support of Plaintiffs' Motion account for only ten communities. (*Id.*)

9    **B.**    **Holiday Communities Vary Based on Setting, Size, and Other Factors**

10    Holiday's communities differ in myriad ways that impact the day-to-day duties of

11 community Co-Managers. For instance, communities vary in the size of the resident population

12 (e.g., some accommodate as many as 700 residents, while others house around 100 residents),

13 the size of the physical facilities, and the services offered. (Stone Decl. II ¶ 6.) Depending on

14 these and other factors, each community employs between 15 and 25 hourly employees in

15 various jobs. (*Id.* ¶ 7.) Communities also vary in turnover, which correlates to differing amounts

16 of time a Co-Manager must spend recruiting, hiring, and training hourly employees. (*Id.* 8.)

17    **C.**    **Holiday's Retirement Community Management Structure Results in**
**Variations in How Co-Manager Duties and Responsibilities Are Exercised**

18

19    Holiday divides its retirement communities into approximately 18 to 20 regions, most of

20 which are comprised of roughly 10 to 13 communities. (Stone Decl. II ¶ 9.) Each region is

headed by a Regional Director, who has wide discretion in overseeing communities in his or her

21 region. (*Id.* ¶ 10.) During the relevant time, each senior living community was managed by a

22 management team consisting of two Lead Managers and two Co-Managers, who lived onsite so

23 that they could ensure round-the-clock coverage of the community.[9] (Stone Decl. I ¶ 4.) Lead

24

---

25 [9] Beginning in 2015 and concluding in or around November 2016, Holiday transitioned the community management structure from a four-person, two-role team to a three-person, three-role team consisting of a General Manager, Assistant General Manager, and Office Manager. (*See* Stone Decl. I ¶ 4.)

26

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

1  Managers and Co-Managers were often married couples or otherwise related. (*See id.*) The

2  working relationship between Co-Managers and Lead Managers varied even within a given

3  community. (K. Rogers Decl. (Dkt. 51) ¶ 25 (different working relationship with Lead Managers

4  Stephen and Karen Shahan and Judy and Kevin McGarvey).)

5      Although scheduling decisions are made at the community level, generally speaking, over

6  the course of a week, Lead Managers and Co-Managers were scheduled in "staggered shifts"

7  such that they would be on-duty "opposite" one another with some hours of overlap. (Stone

8  Decl. II ¶ 12.) Through various configurations decided at the local level, Lead Managers

9  typically would be on-call certain nights of the week, while Co-Managers would be on-call other

10  nights. (*Id.*.) As Opt-In Kimberly Rogers testified in a deposition taken in another case against

11  Holiday,[10] her job duties were "everything a Lead Manager's would be" and when the Lead

12  Managers at her community were not present, she was in charge of managing the entire

13  community. (Decl. of Kevin Young ("Young Decl.") filed herewith, Ex. A at 8, 11, 176-77.)

    **D.**    **Co-Managers' Duties Include Management and Supervisory Responsibilities and They Received Training in Those Roles**

15      Despite the significant variability in the way each Co-Manager accomplished his or her

16  responsibilities, generally, all Co-Managers were responsible for managing the operations of and

17  supervising the hourly employees working at their respective community. (Stone Decl. I ¶¶ 5, 7-

18  9.) Co-Managers were also responsible for driving the financial performance of their community.

19  (*Id.* ¶ 5.) The Co-Manager Job Description's "Essential Duties and Responsibilities" clearly state

20  Holiday's expectation that Co-Managers play an essential role in the management of the

21  retirement community's staff and operations, including:

---

[10] Ms. Rogers' deposition was taken on Nov. 13, 2017 in an arbitration styled *Vai v. Harvest Mgt. Sub TRS Corp.*, First Judicial Dist., Dept. No. DDC 2017-13. Relevant excerpts from her deposition transcript are attached as Ex. A to the Young Decl. Rogers' first-given testimony is at odds with the declaration she now submits in support of the instant Motion (Dkt. 51). Where her declaration flatly contradicts her prior testimony, it should be deemed a sham and disregarded in deciding the Motion. *See, e.g., Balvage v. Ryderwood Imp. & Serv. Ass'n, Inc.*, 2012 WL 2977981, at *5 (W.D. Wash. 2012). Hearsay assertions in the declarations also should be disregarded. *See, e.g., White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 388-89 (D.N.J. 2010) ("On conditional certification motions, just as with summary judgment motions, courts do not consider evidence that is inadmissible.").

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 6

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

- "Manage all aspects of the maintenance, housekeeping, Food Services and dining room functions."

- "Manage all aspects of the Enrichment Coordinator and Bus Driver roles as well as aspects of the special events, activities, internal and external marketing."

- "Responsible for scheduling and payroll administration for the functional areas."

- "Maintenance - Ensure that day-to-day building and ground maintenance issues are addressed and resolved adequately either by Maintenance staff, contractors, or by Home Office Maintenance Department staff."

- "Accounting - Submit reports, invoices, and other financials and approve expenses on a regular basis in accordance with Holiday Retirement's guidance."

- "Read and understand P and L's, budgets and be able to manage."

- "Safety - Responsible for maintaining Holiday Safety Program. Share responsibility with the Managers and Executive Chef to enforce regular employee Safety Committee meetings."

- "Assume responsibility for managing all day-to-day aspects of units directly supervised by the Managers and Executive Chefs in their absence to assure the smooth operation of those functions."

- "Exercise managerial and supervisory authority in a manner that enforces compliance of Holiday Retirement's guidelines and applicable laws."

(*See* Stone Decl. I ¶ 5 & Ex. A.) Although the way each Co-Manager managed his or her community varied, Holiday provided Co-Managers with extensive training and coaching in areas such as interviewing, conducting new hire onboarding and orientation, and managing, evaluating the performance of, disciplining, and terminating hourly employees. (Stone Decl. I ¶ 6.) Holiday also took steps to ensure that Co-Managers could manage day-to-day operations including maintenance, food service, resident enrichment, and community transportation. (*Id.*)

### E. Plaintiffs' and the Opt-Ins' Own Testimony Shows That They and Other Co-Managers Are Not Similarly Situated with Respect to Exempt Job Duties

#### 1. Plaintiffs' Testimony Shows That Co-Managers Are Not Similarly Situated with Respect to Day-to-Day Community Management Duties

Plaintiffs and the Opt-Ins admit in their declarations (albeit vaguely) that they exercised management responsibility.[11] While Plaintiffs attempt to minimize the importance of this work

---

[11] *See* P. Butler Decl. (Dkt. 40) ¶ 17 (performed "some 'managerial' duties"); identical testimony offered by: W. Butler Decl. (Dkt. 41) ¶ 18; D. O'Connell (Dkt. 44) ¶ 25; G. Russell (Dkt. 45) ¶ 28; K. Russell Decl. (Dkt. 46) ¶ 26; J. Bradford Decl. (Dkt. 47) ¶ 22; M. Bradford (Dkt. 48) ¶ 22; K. Rogers Decl. (Dkt. 51) ¶ 26; S. Rogers Decl. (Dkt. 52) ¶ 25; L. Chartier Decl. (Dkt. 53) ¶ 23; M. Hamblin (Dkt. 54) ¶ 21; N. Sykes Decl. (Dkt. 55) ¶ 24; M. Sykes Decl. (Dkt. 56) ¶ 24. Plaintiffs' argument notwithstanding (*see* Pls.' Mot. at 14), it is within this Court's discretion

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 7

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

by alleging that they spent more substantial percentages of time on non-managerial tasks (*see* Pls.' Mot. at 6-7), such broad strokes are insufficient to prove that any individual Co-Manager should have been classified as non-exempt, *see* 29 C.F.R. § 541.700 (percentage of time spent performing exempt work is not dispositive in determining employee's primary duty); and they are certainly insufficient as a basis to extrapolate to a collective conclusion that Holiday misclassified each of its hundreds of Co-Managers across the country.

If anything, Plaintiffs' and the Opt-Ins' attempts to marginalize their exempt managerial work further illuminates the need for individual inquiries into each allegedly misclassified Co-Manager's duties, inquiries that are antithetical to collective action certification in this case. *See Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 965 (W.D. Mich. 2009) (expressing concern about testimonial contradictions "because they show 'the importance of cross-examination of each plaintiff' and suggest 'the need for separate mini-trials to resolve each individual's claim'") (citation omitted). For example:

- Opt-In Kimberly Rogers admitted in her deposition that her duties were those of a Lead Manager, that she was in charge of the community when the Lead Managers were not present, and that her duties included ensuring compliance with Holiday's policies and practices. (Young Decl. Ex. A at 8, 10-11, 176-77.) She also testified that her management duties were *different from* those of her Co-Manager husband's (Opt-In Steven Rogers') duties. (*Id.* at 118, 141, 169-70.) This testimony contradicts their respective declarations (Dkt. 51-52), as well as those of the other Opt-Ins.

- Opt-In Plaintiff Leslie Chartier reported in her résumé that, as Co-Manager, she "facilita[ted]…all Resident Services including Housekeeping, Food Services, Maintenance, Enrichment Activities, and Transportation for 114 residents, and supervis[ed]…30 staff [members]." (*See* Dkt. 30 at 5.) Attempting to explain away these assertions, Chartier submitted a declaration in which she now vaguely claims that these functions were not her "ultimate responsibility." (L. Chartier Decl. (Dkt. 53) ¶¶ 28-29.)

- Opt-In Karen Shahan stated in her résumé that she was responsible for "[c]ollaborat[ing] with senior management to lead and train employees, ensur[ing] satisfaction of Residents and maintain[ing] compliance with all company and legal standards and regulations."

---

to discount the various "cookie cutter" aspects of Plaintiffs' declarations when deciding conditional certification. *See, e.g., Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 266 (S.D.N.Y. 2017) (discussed *infra*). In addition, other declarants testify specifically to performing management duties. *See* W. Butler (Dkt. 41) ¶ 10 ("coordinat[ed] repairs and maintenance with outside vendors"); *id.* ¶ 12 (conducted daily staff meetings).

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

(*See* Dkt. 30 at 5.) Ms. Shahan now attempts to explain in her declaration that she was "referring to the fact that [she] was expected to lead by example...so that [she] could show new staff how tasks were done." (K. Shahan Decl. (Dkt. 49) ¶ 22.)

● Opt-In Daniel O'Connell attempts to explain away broad assertions in his résumé about his managerial and supervisory responsibilities by asserting that he used "language from Holiday's job description...because it sounded more polished than what [he] could have come up with, and [he] also thought it would make [him] more marketable to potential employers." (D. O'Connell Decl. (Dkt. 44) ¶ 30; *see also id.* ¶¶ 29, 31-34.

● Regarding an email about her involvement in a community safety matter, Opt-In Nina Sykes now attempts to diminish her role and offers the self-serving and improper legal conclusion that it "is an example of the lack of discretion and independent judgment [she] had as a [Community Manager]." (N. Sykes Decl. (Dkt. 55) ¶ 30; *see also* ¶¶ 28-29, 31).

● Regarding an email reflecting involvement in resolving a community safety issue, Opt-In the issue to his maintenance director to resolve. (G. Russell Decl. (Dkt. 45) ¶ 31.)

**2.  Plaintiffs' Testimony Shows That Co-Managers Are Not Similarly Situated Regarding Their Supervision of Hourly Employees**

As the Co-Manager job description plainly reflects, Holiday expected its Co-Managers to supervise a workforce of approximately 15-25 hourly non-exempt personnel at each community. *See* 29 C.F.R. § 541.100(a)(3). Almost all Opt-Ins' declarations vaguely and in identical language testify to at least some level of hourly employee supervisory responsibility.[12] The declarants try to minimize these admissions with vague (but again identical) assertions that they "did not independently designate the overall duties" that hourly employees were assigned to perform. (*See, e.g.*, P. Butler (Dkt. 40) ¶ 17; W. Butler (Dkt. 41) ¶ 18.) Without further inquiry into these craftily-phrased admissions, overtime-exempt status cannot be ascertained.

Moreover, evidence Holiday submitted reveals Opt-Ins have admitted to extensive supervisory responsibility in the Co-Manager role. Their own written résumés and work records highlight supervisory work including scheduling employees; training; delegating and supervising

---

[12] *See, e.g.*, P. Butler Decl. (Dkt. 40) ¶ 17 ("instructed other employees to perform specific tasks within the community"); same testimony: W. Butler Decl. (Dkt. 41) ¶ 18; D. O'Connell (Dkt. 44) ¶ 28; G. Russell (Dkt. 45) ¶ 30; K. Russell Decl. (Dkt. 46) ¶ 27; J. Bradford Decl. (Dkt. 47) ¶ 25; M. Bradford Decl. (Dkt. 48) ¶ 25; K. Shahan Decl. (Dkt. 49) ¶ 21; S. Shahan Decl. (Dkt. 50) ¶ 21; K. Rogers Decl. (Dkt. 51) ¶ 28; S. Rogers Decl. (Dkt. 52) ¶ 27; L. Chartier Decl. (Dkt. 53) ¶ 26; M. Hamblin (Dkt. 54) ¶ 23; N. Sykes Decl. (Dkt. 55) ¶ 27; M. Sykes Decl. (Dkt. 56) ¶ 27.

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

work; posting hourly job openings; onboarding new hires; and managing timekeeping and payroll processes. (See Dkt. 30 at 5-8 & evidence cited therein.) In their declarations drafted solely to support certification in this matter, these Opt-Ins try to minimize and contradict their own words about the supervisory duties they performed, but this inconsistency actually highlights the particularized inquiries necessary to determine whether any one of them was misclassified as exempt and the wholesale impropriety of a *collective* determination of that question for all of them. For instance:

- Opt-in Kimberly Rogers testified at deposition that she supervised about 15 employees including housekeepers and servers and helped to train them (Young Decl. Ex. A at 8-9), assertions contradicted by her later declaration. (K. Rogers Decl. (Dkt. 51) ¶¶ 26, 28.) She also testified that her husband, Opt-In Steven Rogers, "was in charge of maintenance and the bus driver," (Young Decl. Ex. A at 118), testimony at odds with his declaration. (S. Rogers Decl. (Dkt. 52 ) ¶ 27.)

- Opt-In Daniel O'Connell explains in his résumé that he "[m]anag[ed] a fully staffed commercial kitchen thorough preparation and serving three meals daily for residents." (*See* Dkt. 30 at 6). Yet in his declaration, O'Connell now disclaims kitchen management responsibility, asking this Court to believe that by "manage," he really meant "help[ing] out as a server and cook." (O'Connell Decl. (Dkt. 44) ¶ 30.)

- In response to an email reflecting his involvement in scheduling, Opt-In O'Connell speculates (inadmissibly) about the recipient's state of mind and avers that he "was simply reminding [the employee] of the company policy, not scheduling when and for how long she must work." (O'Connell Decl. (Dkt. 44) ¶ 31.)

- Regarding a work chart describing Opt-In Michele Hamblin as responsible for supervising housekeeping personnel and the enrichment supervisor, Ms. Hamblin vaguely testifies that "my decisions were generally dictated by Holiday's corporate policy or overseen by…the Lead Manager." (M. Hamblin Decl. (Dkt. 54) at ¶ 24.)

### 3. Co-Managers Are Not Similarly Situated with Respect to Making or Recommending Personnel Decisions

With respect to the exemption-relevant inquiry regarding authority to make or recommend personnel decisions, *see* 29 C.F.R. §§ 541.100(a)(4) Holiday offered evidence, including résumés and emails, showing that Opt-Ins including Shea Schwartz, Nina Sykes, Kathleen and Gordon Russell, Cynthia Shatto, Daniel O'Connell, and Anne Hornback were

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

involved in various hiring, discipline, and termination decisions. (*See* Dkt. 30 at 5-6.) Some of this evidence stands unrefuted, and some Opt-Ins' declarations contain varying, and often vague, contrary assertions. For instance:

- Opt-In Leslie Chartier disclaimed "authority to independently hire, fire, reward, or discipline other employees," but acknowledged her involvement in such activities could be "at the direction or with the approval of the Lead Manager or Regional Manager." (L. Chartier Decl. (Dkt. 53) ¶ 24; *see also id.* ¶ 28.)

- Opt-In Cynthia Shatto testified that she was "not authorized to hire anyone without the consent and approval of [her] Lead Manager," while admitting that on "approximately five occasions, [she] helped interview potential employees… [and] told [her] Lead Manager my impressions and recommendations." (C. Shatto Decl. (Dkt. 42) ¶ 27; *see also id.* ¶ 30 (explaining involvement in a termination decision reflected in email by admitting that she "does not recall this particular email," but nonetheless impermissibly speculating that she "would have sent an email such as this one, after [her] Lead Manager had made the final decision to fire an employee," which she admittedly could have recommended. (C. Shatto Decl. (Dkt. 42) ¶ 30.).)

- Opt-In Gordon Russell stated that he does "not actually recall anyone being fired …, because that would have required my wife [Opt-In Kathleen Russell] and me to have written up and reported that employee multiple times," concluding that he "*believe[s]* the regional management would have been the one to actually fire an employee." (G. Russell Decl. (Dkt. 44) ¶ 27 (emphasis supplied).)

Contrary to paving a way to a collective determination of exempt status, these vague assertions open a myriad of further individualized queries; *e.g.*, when Opt-In Shatto recommended a termination to a Lead Manager, did the Lead Manager give particular weight to the recommendation. *See* 29 C.F.R. § 541.100(a).

Other Plaintiffs have admitted to making personnel decisions independent of the evidence Holiday offered. (*See, e.g.*, W. Butler Decl. (Dkt. 41) ¶ 18 ("interview[ed] and hir[ed] hourly staff"); K. Rogers Dep. (Young Decl. Ex. A) at 120 (hired servers).) In sum, the Opt-Ins' own testimony shows that common proof will not be available to resolve factual discrepancies about this misclassification-relevant inquiry.

## IV. ARGUMENT AND CITATION OF AUTHORITY

This Court should exercise its discretion to deny conditional certification because

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

Holiday's earlier-filed dispositive motions will leave the litigation without any similarly situated Plaintiffs or Opt-Ins. Second, as detailed above, the record evidence shows that Plaintiffs and the Opt-Ins are not similarly situated to one another, much less to a nationwide collective, on the relevant legal issue of whether Holiday violated the FLSA by classifying them as exempt.

### A. The Court Should Exercise Its Discretion to Deny Conditional Certification and Notice to the Requested Nationwide Class

Nothing in the FLSA requires the granting of "conditional certification" or the sending of notice in all FLSA cases styled as collective litigation. Instead, the operative statutory language provides only that "[a]n action to recover [under the FLSA] may be maintained against any employer...by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Supreme Court and federal appeals courts, as well as this Court, repeatedly have recognized the discretionary nature of the "conditional certification" and notice procedure. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("district courts have discretion, *in appropriate cases*, to implement 29 U.S.C. § 216(b)...by facilitating notice to potential plaintiffs" (emphasis added)); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (conditional certification and the sending of notice not required under § 216(b), but may be a helpful case management tool); *Bollinger v. Residential Capital LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) ("Determining whether to certify a FLSA collective action is within the discretion of the court.") (citation omitted).

### 1. The Court Should Decide Holiday's Dispositive Motions First

Dispositive motions should be decided before ruling on a motion for conditional certification in FLSA litigation. *See, e.g.*, *Liebesman v. Competitor Group, Inc.*, No. 4-14-cv-1653 RLW, slip op. at 2 (E.D. Mo. Jan. 15, 2016) ("ruling on Defendant's Motion for Summary Judgment [based on the timeliness of the named plaintiff's consent form] prior to ruling on Plaintiff's Motion for Conditional Class Certification is appropriate because the Motion for Summary Judgment is dispositive of the issues at hand") (citing *Hartley v. Suburban Radiologic*

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

*Consultants, Ltd.*, 295 F.R.D. 357, 368 (D. Minn. 2013)); *accord Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("It is reasonable to consider a Rule 56 motion [before ruling on a class certification motion] when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation.").[13] This Court has before it two previously filed motions that would, if ruled upon, eliminate the need for—or at the very least shape materially—its ruling on this Motion.

> ### 2. Granting Holiday's Motion to Dismiss Requires Denial of Plaintiffs' Motion As Moot and Dismissal of Opt-Ins' Claims

The first motion this Court should determine is Holiday's Motion to Dismiss, which if granted would eliminate the need for a ruling on the instant Motion. With its Motion to Dismiss, Holiday established that the two Named Plaintiffs, Patricia and Wesley Butler, filed for Chapter 7 bankruptcy in November 2015 and their debts were discharged in February 2016. Because the Butlers, who were unequivocally aware of the overtime claims that they assert in this case when they filed for bankruptcy, failed to disclose the existence of such claims in their bankruptcy petition and secured a discharge of their debts, they are judicially estopped from proceeding in this case. (*See* Dkt. 11 at 4-5; Dkt. 24.) They are certainly estopped, as well, from prosecuting the claims of other persons with whom they are not, by definition, similarly situated.

Without named plaintiffs, FLSA litigation cannot proceed. *See, e.g.*, *Wass v. Dolgencorp, LLC*, 2014 U.S. Dist. LEXIS 147613, at *3-5 (W.D. Mo. Oct. 16, 2014) ("[W]here a motion for summary judgment against [an FLSA named plaintiff] is granted in full, a pending motion for conditional certification becomes moot").[14] If Plaintiffs' Complaint is dismissed, the Motion is moot and Opt-Ins' claims must be dismissed as well.

---

[13] *See also, e.g.*, *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1207 (10th Cir. 2015) (affirming trial court's decision to rule on summary judgment before certification).

[14] *See also, e.g.*, *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669 (S.D. Cal. 2012) (granting employer's motion for summary judgment and denying as moot plaintiffs' motion for conditional class certification).

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

### 3. Granting Holiday's Motion to Strike Will Result in the Absence of Any Opt-Ins and Require Denial of Conditional Certification

Holiday's pending Motion to Strike shows that that each Opt-In then-present in the case—but not Plaintiffs Wesley and Patricia Butler—is bound to arbitrate their claims on an individual basis. (Dkt. 30.) In a supplemental filing (Dkt. 59), Holiday showed that two later-joining Opt-Ins (*see* Dkt. 35) also are bound to individual arbitration. Five additional Opt-Ins filed notices of consent to join since Holiday supplemented its Motion to Strike—each of whom is bound to arbitrate their claims on an individual basis as well. (Stone Decl. II ¶ 19.) Moreover, nearly all former Co-Managers to whom Plaintiffs propose notice be sent—***nearly 99%***—are subject to individual arbitration. (*Id.* ¶¶ 20.)

On these facts, conditional certification should be denied for two reasons. First, Plaintiffs are not similarly situated with the Opt-Ins or members of the purported nationwide collective. *See, e.g.*, *Fischer v. Kmart Corp.*, 2014 WL 3817368, at *7 (D.N.J. 2014) ("Opt–In[s] consented to an arbitration agreement and a collective action waiver. Therefore, they are both prevented from joining this collective action because of the Agreement and are also not similarly situated to members who can arbitrate in a collective action."); *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 81 (D.N.J. 2014) (excluding those subject to mandatory arbitration from collective as not similarly situated to named plaintiffs, who lacked standing to contest validity of agreements); *Morangelli v. Chemed Corp.*, 2010 U.S. Dist. LEXIS 146149, at *13 (E.D.N.Y. 2010) (excluding putative opt-ins who signed arbitration agreements because they "are subject to unique defenses that cannot be bifurcated or sub-classed away" in an FLSA case).

Second, certifying a collective on these facts would be a monumental waste of judicial and private resources. Not only are Plaintiffs' claims subject to dismissal on judicial estoppel grounds (and, in any event, time-barred under the FLSA's standard two-year limitations

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 14

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

period[15]), but **_virtually all_** former Co-Managers who could opt in have agreed to arbitrate their claims on an individual basis. (Stone Decl. II ¶¶ 19-20.) It makes no sense to invite each of them to join litigation in which they have no right to participate. *See id.* (noting that where employer had "strong chance of succeeding" in enforcing agreement, "[i]t would be a disservice to judicial efficiency to certify all technicians, when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the class").

The two non-binding decisions that Plaintiffs cite do not require conditional certification. (Pls.' Mot. at 14.) First, in *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 953-54 (N.D. Cal. 2017), a substantially smaller percentage of the requested class was subject to arbitration than here, making manageability and judicial economy considerations less determinative. Here, in contrast, nearly 99% of the requested class could be subject to dismissal under their arbitration agreements upon opting in, thus putting the parties and the Court to needless and wasteful discovery and motion practice. Second, in *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015), unlike here, the court had not been presented with a motion seeking to enforce the arbitration agreements at issue before deciding certification. At bottom, neither case—*Conde* or *Shaia*—changes the fact that this Court can and should deny Plaintiffs' Motion.

If any collective is certified, the presence of arbitration agreements binding current and putative Opt-Ins would require that it be very narrowly constrained. In *Saravia v. Dynamex*, 310 F.R.D. 412 (N.D. Cal. 2015), the named plaintiffs requested conditional certification of a collective of delivery drivers allegedly misclassified as independent contractors, while the defendant sought to enforce applicable arbitration agreements. The court in *Saravia* considered the complex state-law rules regarding choice-of-law issues and substantive defenses such as unconscionability applying to arbitration agreements that are determined by state law. *Id.* at 418-22. Based on these considerations, the court certified a collective but limited it to *California*

---

[15] This point further makes Named Plaintiffs inadequate representatives of a substantial part of the class they would have this Court certify, as they both would have to sustain a heightened burden for recovery (i.e., the burden to establish that Holiday willfully violated the FLSA) that many among the putative class would avoid.

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 15

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

1  *drivers only*, to "ensure that the arbitration clauses are subject to only one state's laws, which

2  will facilitate collective-wide treatment." *Id.* at 425. Likewise in *Conde*, the court permitted

3  persons subject to arbitration agreements in only one state to receive notice "in order to ensure

4  the manageability of th[e] case." *Conde*, 223 F. Supp. 3d at 969.

5      As in *Adami* and *Morangelli*, this Court should decline to certify any collective including

6  persons subject to individual arbitration agreements. At the very most, in light of potential

7  conflicts and differences in applicable state law with respect to the agreements, this Court should

8  exercise its discretion and limit the group to which notice might be sent.

9      **B.    Plaintiffs Have Not Met Their Burden for Conditional Certification**

10          **1.    The Similarly Situated Standard Requires Common Proof**

11      Neither the Supreme Court nor the Ninth Circuit has definitively interpreted what it

12  means to be "similarly situated" for purposes of maintaining a collective action under 29 U.S.C.

13  § 216(b). Plaintiffs' Motion would have this Court conclude that "conditional certification" and

14  notice are presumptively granted whenever FLSA plaintiffs offer a minimal showing that

15  members of the proposed collective are similarly situated in any regard, such as with respect to

16  the training they receive. (Pls.' Mot. at 1-2, 10-13.) Even under the two-step approach that

17  Plaintiffs urge here, the so-called "lenient" first-step showing is not so rudderless as to permit

18  conditional certification on virtually any factual record and in any litigation context. "At the

19  notice stage, plaintiffs must provide 'substantial allegations that the putative class members were

20  together the victims of a single decision, policy, or plan.'" *Khadera v. ABM Indus. Inc.*, 701 F.

21  Supp. 2d 1190, 1194 (W.D. Wash. 2010) (quoting *Thiessen v. Gen. Electric Capital Corp.*, 267

22  F.3d 1095, 1102 (10th Cir. 2001)). The alleged policy or plan must not only be "common," it

23  must itself be unlawful under the FLSA. *See, e.g., Martin v. Sprint*, 2016 WL 30334, at *6

24  (S.D.N.Y. 2016). In misclassification cases, to put an employer to the burden of nationwide

25  notice and discovery, there must be more evidence than that the job duties of some members of

26  the putative collective allegedly did not satisfy a particular overtime exemption. Rather, "[t]o

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 16

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

warrant certification of a nationwide collective action in a case where plaintiffs challenge the exempt classification of their position, plaintiffs must ultimately 'demonstrate a nationwide policy pursuant to which [the plaintiffs] are assigned duties that render [the employer's] exempt classification inappropriate.'" *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 262 (S.D.N.Y. 2017) (quoting *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012) (citing *Vasquez v. Vitamin Shoppe Indus. Inc.*, 2011 WL 2693712, at *3 (S.D.N.Y. 2011)).

Given the requirement of a "common policy," district courts deciding conditional certification, including courts in the Ninth Circuit, properly consider whether the case is amenable to common evidence against the legal backdrop of the claims presented. *See, e.g.*, *Trinh v. J.P. Morgan Chase & Co.*, 2008 WL 1860161, at *3-5 (S.D. Cal. 2008) (courts examine the extent to which FLSA collective members will rely on common evidence).[16] In *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338 (2011), the Supreme Court considered, in the Rule 23 class action context, the importance of considering ultimate proof issues when deciding whether a large group should be permitting to proceed in single litigation. The Supreme Court emphasized that for the necessary Rule 23(a) element of commonality to be satisfied, the issue was not whether common questions existed, but whether *common answers* to those questions could be found. For claims to be certified as a class, they "must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. An alleged "violation of the same provision of law" is not enough. *Id.* Some courts have cited and applied *Dukes* directly in denying conditional certification,[17] and its lessons should not be

---

[16] *Accord Palacios v. Boehringer Ingelheim Pharmas., Inc.*, 2011 WL 6794438, at *6 (S.D. Fla. 2011) (courts should assess whether FLSA claims are amenable to common evidence); *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 219 (D. Conn. 2003) (court must be satisfied that common questions would predominate the merits determination).

[17] *E.g., MacGregor v. Farmers Ins. Exchange*, 2011 U.S. Dist. LEXIS 80361, at *9-10 (D.S.C. 2011) (citing *Dukes* and holding that collective action treatment was inappropriate because "[w]hen alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate") (internal quotations and citations omitted).

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 17

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

lost here, where evidence already before this Court shows that resolution of Plaintiffs' misclassification claims will not be resolved through common evidence.

### 2. Heightened Analysis is Appropriate Where Informal Notice Has Been Issued and Substantial Evidence About Job Duties Already Exists

The facts and posture of this case warrant a heightened level of scrutiny. Exercising their discretion, courts find that such scrutiny is appropriate when, for instance, substantial evidence already exists. As the court explained in *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016), "Given the discretionary, managerial nature of the inquiry, not to mention the inherent imprecision of words like 'modest' and 'lenient,' a Court's initial review may properly grow more exacting as discovery proceeds." *Accord Steger v. Life Time Fitness, Inc.*, 2016 WL 245899, at *2 (N.D. Ill. 2016) (applying intermediate level of scrutiny where limited discovery had been undertaken and considering both parties' evidence); *Lewis-Gursky v. Citigroup, Inc.*, 2017 WL 892604, at *4 (M.D. Fla. 2017) ("Where a period of discovery precedes the filing of the motion for conditional certification, the rationale for a more lenient standard at the preliminary stage of a case disappears.").

While formal discovery has not commenced, this Court's heightened scrutiny is appropriate. Through Holiday's Motion to Strike and the evidence Plaintiffs submitted in response to it, as well as the evidence submitted by both parties regarding conditional certification, enough record evidence already exists in this case through informal discovery to support taking a closer look and concluding that Plaintiffs are not similarly situated.[18] This Court therefore should not hesitate to consider Holiday's evidence and apply to all of the evidence a heightened standard that looks beyond Plaintiffs' affidavits.

Further, this is an unusual case in which Plaintiffs have had an extraordinary amount of

---

[18] Plaintiffs incorrectly assert that evidence about differences among collective members should not be considered in a conditional certification analysis. (Pls.' Mot. at 12-13.) The two quoted passages on p. 13 of the Motion, which Plaintiffs attributed to *Bazzell v. Body Contour*, 2016 U.S. Dist. LEXIS 89012 (W.D. Wash. July 8, 2016), do not appear in the *Bazzell* decision (in which the defendant did not offer evidence contradicting the plaintiffs' claims of similarity). In deciding conditional certification in misclassification cases, courts often do consider this type of evidence. *See, e.g.*, *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at **6-7 (W.D. Wash. 2014).

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 18

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

time to find and notify other putative class members of their lawsuit, have used that opportunity to persuade others to do so (notwithstanding the impropriety of their involvement for reasons already explained), and have obviously exhausted the pool of those who might want to join the case. In fairness, this case has progressed to a point at or near the typical decertification stage of FLSA collective action litigation. To allow Plaintiffs even more time to spend this Court's resources and Holiday's money while they go back to the veritable well of putative class members who have thus far signaled disinterest in this case would be a waste. Courts have chosen to avoid this very kind of wasted time, money, and resources. *See Detho v. Bilal*, 2008 WL 2962821 (S.D. Tex. 2008) (discussing cases requiring showing of interest as relevant to the decision whether to put a defendant employer to the expense and effort of notice). With this in mind, this Court's heightened scrutiny would permit Plaintiffs to proceed collectively only if such expenditures were actually justified.

### 3. Plaintiffs Have Not Shown a Common Plan or Policy That Violated the FLSA, and Conditional Certification Therefore Must Be Denied

Under either a lenient or a more heightened level of scrutiny, Plaintiffs' evidence is not enough to sustain the requested nationwide certification. In a misclassification case such as this, the Court should not succumb to the circular reasoning that "failure to pay overtime" to employees classified as overtime-exempt constitutes a sufficient "common plan" to support a certification and notice order. (Pls.' Mot. at 14-15.) Were that so, a collective could be presumptively certified for virtually any group of employees classified by their employer as exempt. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

#### a. *Plaintiffs' Uniform Job Classification is Not Proof of a Common Plan or Policy Sufficient to Support Conditional Certification*

Plaintiffs' Motion suggests that the fact Co-Managers are classified as exempt from overtime is in itself relevant to the conditional certification analysis. (Pls.' Mot. at 2, 9, 14.) In its very recent decision in *Brown v. Barnes and Noble, Inc.*, 252 F. Supp. 3d 255 (S.D.N.Y. 2017), the court flatly rejected this and the other sort of evidence Plaintiffs offer here as insufficient to

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

support conditional certification of FLSA misclassification claims.[19] The plaintiffs in *Brown* sought to certify a nationwide collective of more than 1,000 bookstore managers who worked in 583 stores over a three-year period. *Id.* at 257-58. The named plaintiff worked in two Illinois locations, and eight opt-in plaintiffs worked in various stores in Illinois and five other states. *Id.* at 259. Six plaintiffs submitted declarations asserting that "their 'primary duties' involved the performance of non-exempt tasks, such as 'making coffee and other beverages, preparing food, serving customers, working on the cash register, and cleaning the café.'" *Id.* at 259. As here, the declarants averred that they spent the majority of their time on such non-exempt duties and that their primary duties did not involve managing or supervising. *Id.*

Rejecting the plaintiffs' arguments, the court in *Brown* found that the "Defendant's classification of [Café Managers] as exempt, standing alone, is insufficient to satisfy the low threshold for conditional certification." *Brown*, 252 F. Supp. 3d at 262. Numerous other courts from within the Ninth and other Circuits agree.[20] For similar reasons, this Court should give no weight to Plaintiffs' reference to the fact that Holiday previously faced a legal challenge to the overtime-exempt classification of various positions including the Co-Manager job, and thereafter "continued to classify [Co-Managers] as exempt." (*See* Pls.' Mot. at 2; Compl. ¶ 10.) No collective was certified in the referenced case, *Cwik v. Harvest Mgmt. Sub LLC*, No 2:12-cv-08309 (C.D. Cal. April 15, 2013), and the settlement in that case expressly disclaimed liability, and further stated that the settlement agreement is not and may not be deemed to be, or used as an admission or evidence of, any wrongdoing or liability by Holiday. (*See* Jt. Mot. to Approve Settlement, attached as Ex. F to Def.'s Mot. to Dismiss. (Dkt. 11-1).) No facts support Plaintiffs'

---

[19] The plaintiffs in *Brown* were represented by Plaintiffs' counsel here, Gregg Shavitz. The evidence deemed insufficient to support nationwide certification in *Brown* is essentially identical to the evidence that likewise should be found to be insufficient here. *See Brown*, 252 F. Supp. 3d at 262.

[20] *See, e.g., Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) *(citing Vinole*, 571 F.3d at 946, and rejecting an allegation of misclassification as sufficient for FLSA conditional certification); *Jenkins*, 853 F. Supp. 2d at 323 (noting that "'the mere classification of a group of employees—even a large or nationwide group—as exempt…is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated'") (citation omitted); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 351 (E.D.N.Y. 2013) (similar).

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 20

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

1    insinuation that a prior, settled lawsuit is tantamount to an admission or acknowledgement of

2    illegal misclassification, so the fact that the classification did not change after the *Cwik* lawsuit

3    settled is probative of nothing.

4        Equally without significance is the fact that Holiday eliminated the Co-Manager position

5    starting in 2015 in favor of a realigned three-tier management structure. (*See* Stone Decl. I ¶ 4.)

6    Without offering any supporting evidence about positions created after this realignment,

7    Plaintiffs argue that allegedly offering some of them hourly non-exempt positions when the Co-

8    Manager job was eliminated "essentially was tantamount to a reclassification." (Pls.' Mot. at 3.)

9    As the court in *Brown* reasoned, "there could be many legitimate business reasons for an

10   employer to reclassify employees, including changes to the corporate structure, changes to the

11   [Café Manager] job, or anticipated regulatory changes. Plaintiffs have not presented any

12   evidence regarding why Defendant reclassified the [Café Manager] position, and this Court

13   declines to speculate on this point." 252 F. Supp. 3d at 263.

14             **b.**    ***The Co-Manager Job Description Does Not Support Certification***

15       Plaintiffs submit the Co-Manager Job Description in support of their Motion (Pls.' Mot.

16   at 10; Dkt. 39 (Shavitz Decl.) ¶ 5 & Ex. A), but ignore its extensive delineation of managerial

17   and supervisory responsibilities, as discussed above. Plaintiffs do not argue that the Job

18   Description *itself* depicts a position whose duties would not support an overtime-exempt

19   classification. Rather, they argue that their job duties primarily included tasks not identified as

20   such in the Job Description, such as unclogging toilets, cleaning and washing dishes, and

21   collecting rent. (Pls.' Mot. at 6.) On similar facts, the court in *Brown* had little trouble dismissing

22   the relevance of the uniform job description in declining to grant conditional certification to the

23   requested nationwide collective of Café Managers. *Brown*, 252 F. Supp. 3d at 263 ("under

24   Plaintiffs' own theory of the case, the job description did not accurately reflect the duties they

25   personally performed") (citing *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800-01

26   (S.D.N.Y. 2012) ("Obviously, [plaintiff's] pointing to a common policy at Marshalls regarding

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

1    the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties,

2    particularly given that all policies and writings from Marshalls dictate just the opposite.")).

3    Rather than support their argument that they are similarly situated, offering the facially proper

4    Job Description together with declarations averring that Co-Managers performed duties different

5    from the Job Description in fact weighs *against* conditional certification by showing that each

6    individual's job duties must be examined.

            ### c.    *Corporate Guidelines Do Not Support Classification*

8            Plaintiffs next allege that "Holiday's strict policies and procedures governed the [Co-

9    Managers'] employment." (Pls.' Mot. at 4; *see also, e.g.*, P. Butler Decl. (Dkt. 40) ¶ 12; W.

10   Butler Decl. (Dkt. 41) ¶ 12.) As a preliminary matter, these "policies and procedures" are not in

11   evidence, but only "referenced" in other documents (specifically, in the Job Description and

12   2014 "Community Expectations" document submitted as Dkt. 39-1, 39-2). The court in *Brown*

13   declined to give any weight to declarants' general testimony that they were constrained by

14   policies without submitting those policies and providing specific information about how they

15   affected job duties. *Brown*, 252 F. Supp. 3d at 265 ("This Court cannot conclude, based on the

16   sparse evidentiary record before it, that Defendants operational policies directed [Café Managers]

17   nationwide to perform principally non-exempt work."). The righteousness of this conclusion is

18   supported by cases holding that the existence of operational guidelines in and of themselves do

19   not necessarily negate exempt status.[21] Similarly, the alleged existence of a "lean staffing model"

20   at each community (*see* Pls.' Mot. at 6), about which no specific evidence has been offered, does

21   not render Plaintiffs similarly situated on their misclassification claims. *Brown*, 252 F. Supp. 3d

22   at 265; *see also Brickey v. Dolgencorp Inc.,* 272 F.R.D. 344 (W.D.N.Y. 2011).

            ### d.    *Other Corporate Documents and Uniform Co-Manager Training Do Not Support Classification*

            Plaintiffs also cite and rely on a few other documents such as an interview checklist, a

---

[21] *See, e.g., Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 900-01 (6th Cir. 2012); *Renfro v. Indiana Michigan Power Co.,* 497 F.3d 573, 577 (6th Cir. 2007).

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

bonus plan, and Co-Manager job postings and offer letters, in addition to allegations about the training Co-Managers received. (Pls.' Mot. at 8-10; Dkt. 39 (Shavitz Decl.) ¶ 5 & Exs. B-G thereto.) These documents have no significance for several reasons. First, like the job description, they do not reflect that Holiday instructed, trained, or required Co-Managers to perform non-exempt tasks as their primary duties. Second, they provide no basis for concluding that Plaintiffs and the Opt-Ins are similarly situated with respect to the duties they actually performed. *See, e.g.*, *Ahmed*, 103 F. Supp. 3d at 351 (uniform training insufficient to conclude assistant store managers were similarly situated).

### e.   *Plaintiffs' and the Opt-Ins' Declarations Do Not Demonstrate that They and Other Co-Managers Are Similarly Situated*

Finally, Plaintiffs' declarations do not permit the conclusion that they are similarly situated to each other or, moreover, to the proposed nationwide collective. First, and fundamentally, Plaintiffs are not similarly situated with Opt-Ins or other former Co-Managers because: (i) Plaintiffs' claims entail a willfulness proof requirement; (ii) Plaintiffs are not subject to arbitration agreements and hence cannot present defenses to the enforcement of such agreements on behalf of those who are; and (iii) Plaintiffs are estopped from pursuing their own claims or those of the collective.

Second, the record evidence shows that numerous Opt-Ins exercised management and supervisory duties in varying ways and to varying extents. Some have attempted to "explain away" evidence showing their performance of exempt duties; others have not. The declarations and other record evidence show differences in job duties such that no common proof is available to answer the question whether each Co-Manager in 43 states was properly classified as exempt, thus making certification improper.[22]

Plaintiffs' evidence boils down to this: assertions by 17 declarants that they performed

---

[22] *See, e.g., Odem v. Centex Homes,* 2010 WL 424216, at *6 (N.D. Tex. 2010) (denying conditional certification and dismissing opt-ins' claims where testimonial evidence showed differences in job duties); *Yoakum v. PBK Architects, Inc.,* 2010 WL 4053956, at *2 (S.D. Tex. 2010) (similar).

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 23

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

some "non-exempt" duties and that those duties consumed a substantial portion of their workday. (Pls.' Mot. at 6-7.) This evidence represents a little over 2% of the 720 Co-Managers who worked for Holiday in the two years preceding the noting date of Plaintiffs' Motion, and an even smaller percentage of the 1,242 Co-Managers encompassed within a three-year period, as Plaintiffs seek. The court in *Brown* found similar evidence insufficient to certify a nationwide collective. *Brown*, 252 F. Supp. 3d at 267 ("Plaintiffs represent less than one percent of CMs nationwide," which "is insufficient for the Court to find a factual nexus between Plaintiffs' personal experience in the CM position and the experience of 1,110 CMs nationwide"); *see also* 29 C.F.R. § 541.700(b) (percentage of time spent performing exempt work not dispositive in determining primary duty).[23] As in *Brown,* Plaintiffs' scant evidence does not support the massive nationwide collective that they seek.

## V.   **CONCLUSION**

For the foregoing reasons, this Court should exercise its case management discretion and, in the interest of judicial efficiency and fairness, deny Plaintiffs' Motion.

DATED: January 16, 2018

By: s/ Brett C. Bartlett
Brett C. Bartlett *(admitted pro hac vice)*
**Seyfarth Shaw LLP**
Attorneys for Defendant HARVEST
MANAGEMENT SUB, LLC d/b/a
HOLIDAY RETIREMENT
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309-3958
Telephone: 404.885.1500
Facsimile: 404.892.7056
Email: BBartlett@seyfarth.com


By: s/ Chelsea Dwyer Petersen
By: s/ Charles N. Eberhardt
Chelsea Dwyer Petersen #33787
Charles N. Eberhardt #18019
**Perkins Coie LLP**
Attorneys for Defendant HARVEST

---

[23] *See also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114-15 (9th Cir. 2001) (husband-wife RV park management team who alleged they spent over half their time on non-exempt duties were nonetheless exempt where "[t]he relative importance of [their] managerial duties compared to their nonexempt duties supports the exemption").

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 24

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

MANAGEMENT SUB, LLC d/b/a
HOLIDAY RETIREMENT
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email:  CDPetersen@perkinscoie.com
        CEberhardt@perkinscoie.com

DEF.'S OPP. TO PLS.' MOT. FOR CONDITIONAL
CERT. & NOTICE (No. 2:17-cv-00685-RAJ) - 25

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500

## CERTIFICATE OF SERVICE

On January 16, 2018, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document(s):

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AND NOTICE TO FLSA COLLECTIVE**

| | |
|---|---|
| Alan L. Quiles | ☐ Via Hand Delivery |
| Gregg I. Shavitz | ☐ Via U.S. Mail, 1st Class, |
| Shavitz Law Group, P.A. | Postage Prepaid |
| 1515 South Federal Highway, Ste. 404 | ☐ Via Overnight Delivery |
| Boca Raton, FL 33432 | ☐ Via Facsimile |
| Telephone: (561) 447-8888 | ☑ Via E-filing |
| Facsimile: (561) 447-8831 | |
| Email: aquiles@shavitzlaw.com | |
| gshavitz@shavitzlaw.com | |

*Attorneys for Plaintiffs*

| | |
|---|---|
| Adrienne McEntee | ☐ Via Hand Delivery |
| Jennifer Rust Murray | ☐ Via U.S. Mail, 1st Class, |
| Beth E. Terrell | Postage Prepaid |
| Terrell Marshall Law Group PLLC | ☐ Via Overnight Delivery |
| 936 N. 34th St., Ste. 300 | ☐ Via Facsimile |
| Seattle, WA 98103 | ☑ Via E-filing |
| Telephone: (206) 816-6603 | |
| Facsimile: (206) 350-3528 | |
| Email: amcentee@terrellmarshall.com | |
| jmurray@terrellmarshall.com | |
| bterrell@terrellmarshall.com | |

*Attorneys for Plaintiffs*

I certify under penalty of perjury under the laws of the State of Georgia that the foregoing is true and correct. Dated at Atlanta, Georgia, this 16th day of January, 2018.

*s/ Brett C. Bartlett*
Brett C. Bartlett

CERTIFICATE OF SERVICE (No. 2:17-cv-00685-RAJ)

**Seyfarth Shaw LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Phone: 404.885.1500